UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARRY FITZGERALD,<br><br>　Plaintiff<br><br>V.<br><br>METROPOLITAN LIFE INSURANCE COMPANY AND THE NORTHEAST HEALTH SYSTEMS DISABILITY PLAN,<br><br>　Defendants | CIVIL ACTION NO. |

## COMPLAINT

1. Plaintiff, Barry Fitzgerald ("Mr. Fitzgerald") brings this action against the Defendants, Life Metropolitan Life Insurance Company ("MetLife") and the Northeast Health Systems Disability Plan ("Plan") (collectively referred to as "Defendants"), for violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et. seq.* ("ERISA"). Mr. Fitzgerald is a participant in an ERISA welfare benefit plan insured and administered by MetLife.

2. Mr. Fitzgerald is filing this action to: 1) recover long-term disability ("LTD") benefits due to him under the terms of the Plan; 2) enforce his present rights existing under the Plan; 3) clarify rights under the terms of the Plan; and 4) recover damages, twelve percent interest on his past due benefits, costs and attorney's fees.

3. Mr. Fitzgerald challenges the Defendants': 1) unreasonable and unlawful denial of Mr. Fitzgerald's LTD benefits despite the substantial medical and vocational evidence demonstrating Mr. Fitzgerald's qualification for said benefits; 2) pattern of rejecting and/or

1

ignoring the substantial evidence supporting Mr. Fitzgerald's disability in an effort to limit Defendants' financial exposure for Mr. Fitzgerald's claim; 3) failure to provide Mr. Fitzgerald with a full and fair review of his LTD claim, including repeatedly denying and terminating Mr. Fitzgerald's benefits on the basis of the same errors regarding the duties of his occupation and his earnings; and 4) failure to provide a reasonable claims procedure that would yield an impartial decision on the merits of Mr. Fitzgerald's LTD claim.

## PARTIES

4. Mr. Fitzgerald is a resident of Massachusetts. Mr. Fitzgerald is a vested participant in Defendants' employee benefit plan, within the meaning of 29 U.S.C. § 1002(2) (7). Mr. Fitzgerald has standing to bring this action under 29 U.S.C. § 1132(a).

5. The defendant, Metropolitan Life Insurance Company, is a for-profit corporation with its principal place of business in New York, New York. MetLife transacts business in Massachusetts and insures and is the party responsible for processing claims made under the Plan and making a final determination as to Mr. Fitzgerald's eligibility for benefits.

6. At all times relevant to the claims asserted in this Complaint, Defendant MetLife purported to act as an ERISA claims fiduciary with respect to participants of the LTD Plan generally, and more specifically with respect to Mr. Fitzgerald, within the meaning of ERISA.

7. The Plan under which Mr. Fitzgerald is suing is an "employee welfare benefits plan" as defined by ERISA, 29 U.S.C. §1002(1).

## STATEMENT OF FACTS

**Relevant Plan Terms.**

8. As an employee of Northeast Health Systems, Mr. Fitzgerald was eligible for LTD insurance coverage under a contract of insurance with MetLife.

9. Should Mr. Fitzgerald be deemed disabled under the terms of the Plan, he would be entitled to the payment of his LTD benefits until his normal retirement age or for as long as he remains disabled, whichever comes first.

10. The Plan contains a narrow definition of disability Mr. Fitzgerald must meet in order to prove his eligibility for benefits. In particular, Mr. Fitzgerald must demonstrate that he is unable to perform the duties of any occupation that would pay him 80% of his indexed predisability earnings.

11. 80% of Mr. Fitzgerald's indexed predisability earnings is $31.84 per hour.

12. As a result of the functional limitations imposed by his combined illnesses, Mr. Fitzgerald has met his burden of proving he is unable to perform with reasonable continuity the duties of any occupation, including one that would pay him 80% of his indexed predisability earnings.

13. Mr. Fitzgerald has met his burden of proving that he meets the Plan definition of disability and is therefore eligible for LTD benefits under the terms of the Plan.

14. Neither the Plan nor MetLife has any administrative processes and safeguards (as those terms are used in 29 C.F.R. §2560.503-1) in place to ensure and to verify appropriately consistent decision making.

15. The Plan does not confer discretion on MetLife to determine eligibility for benefits or to interpret the terms of the Plan.

**MetLife's Conflict of Interest**

16. MetLife's conflict of interest as the payor of Mr. Fitzgerald's benefits and the party responsible for determining his eligibility for benefits infected its decision to terminate Mr. Fitzgerald's LTD benefits.

    a.    **MetLife's purposeful misunderstanding of Mr. Fitzgerald's education, training and experience and its application to his claim**.

17. MetLife's conflict of interest in evident in its failure to correctly evaluate Mr. Fitzgerald's claim from a vocational perspective, despite its own vocational reviewer's finding Mr. Fitzgerald's education, training and history prevented him from performing the duties of his own or any gainful occupation as defined under the terms of the Plan.

18. MetLife's decision to uphold its termination of Mr. Fitzgerald's benefits ignored its own vocational review and the independent vocational review of Mr. Fitzgerald's claim, revealing he was unable to perform the duties of any gainful occupation.

    b.    **Mr. Fitzgerald's entitlement to Social Security Disability Income benefits**.

19. The Plan includes a provision offsetting benefits Mr. Fitzgerald receives from the Social Security Administration ("SSA") as a result of his receipt of Social Security Disability Insurance ("SSDI") benefits.

20. At MetLife's request, Mr. Fitzgerald applied for SSDI benefits.

21. MetLife offered Mr. Fitzgerald free representation in his claim for SSDI benefits, through its vendor, The Advocator Group, after approving his claim for LTD benefits.

22. Mr. Fitzgerald engaged The Advocator Group to assist Mr. Fitzgerald in its pursuit of SSDI benefits.

23. The Advocator Group kept MetLife apprised as to the status of Mr. Fitzgerald's claim for SSDI benefits, and its advocacy on Mr. Fitzgerald's behalf, pursuant to an authorization Mr. Fitzgerald was required to sign.

24. Mr. Fitzgerald was found disabled from performing the duties of any occupation by the SSA on November 12, 2016, retroactive to his last day worked.

25. Under the SSA, the term "disabled" means a person is incapable of engaging in "any substantial gainful activity," (42 U.S.C. § 423(d)(1)(A)); i.e., the person is entirely precluded from working on a regular basis.

26. The burden of proving eligibility for SSA benefits is arduous, in that a person must demonstrate an inability to engage in "any substantial gainful activity" in order to be granted benefits. 42 U.S.C. § 423(d)(1)(A)(definition of "disabled" under Social Security disability program).

27. The standard for proving eligibility for benefits under the Plan is less onerous than the SSA's standard of disability, in that Mr. Fitzgerald must only prove he is unable to perform the duties of an occupation that pays him or $31.84 an hour to demonstrate his eligibility for benefits under the terms of the Plan.

28. After Mr. Fitzgerald was approved for LTD benefits, MetLife requested and was paid by Mr. Fitzgerald, his retroactive SSDI benefits as required by the terms of the Plan.

29. MetLife subsequently reduced Mr. Fitzgerald's monthly benefits based on his award of SSDI benefits only to then terminate his benefits two years later.

30. MetLife did not address the SSA's determination of disability when it terminated Mr. Fitzgerald's claim for LTD benefits.

31. MetLife ignored the SSA finding of disability even though the SSA's determination offers objective proof of Mr. Fitzgerald's disability under a more onerous standard than that which exists under the terms of the Plan.

32. MetLife failed to reconcile the SSA's finding of disability against the definition of disability in the Plan and the evidence submitted by Mr. Fitzgerald in support of his claim for LTD benefits.

**Mr. Fitzgerald's Claim for LTD Benefits.**

33. Mr. Fitzgerald's last day of work at Northeast Health Systems was January 21, 2016, due to symptoms and limitations he suffered as a result of his combined medical conditions.

34. Mr. Fitzgerald ceased working because his combined medical conditions resulted in symptoms that functionally limited his ability to perform on a full- or part-time basis, the duties of his own or any gainful occupation.

35. On April 26, 2016, MetLife approved Mr. Fitzgerald's claim for LTD benefits under the terms of the Plan.

36. MetLife continued to pay Mr. Fitzgerald's claim for benefits through September 25, 2018, when it terminated Mr. Fitzgerald's benefits without notice.

37. MetLife determined Mr. Fitzgerald was able to perform the duties of any gainful occupation despite its own vocational review disagreeing with this assertion.

38. On March 21, 2019, Mr. Fitzgerald appealed MetLife's decision to terminate his claim for LTD benefits.

39. Mr. Fitzgerald submitted an independent functional capacity evaluation performed at Spaulding Rehabilitation Hospital as well as an independent vocational evaluation in support of his appeal.

40. On November 12, 2019, MetLife upheld its decision to terminate Mr. Fitzgerald's claim for LTD benefits.

41. MetLife's assertion that Mr. Fitzgerald was no longer disabled and therefore not entitled to LTD benefits was unreasonable and unsupported by the substantial evidence in MetLife's possession.

42. Mr. Fitzgerald has exhausted his administrative remedies under the terms of the LTD Plan.

**Summary of Defendants' Review of Mr. Fitzgerald's Claim.**

43. Mr. Fitzgerald has exhausted his administrative remedies pursuant to 29 C.F.R. 2560.503-1(1).

44. Mr. Fitzgerald's disability and eligibility for LTD benefits is based on the substantial evidence in MetLife's possession.

45. MetLife and their medical and vocational reviewers arbitrarily dismissed Mr. Fitzgerald's symptoms and functional limitations when they determined that Mr. Fitzgerald was no longer disabled.

46. MetLife failed to have Mr. Fitzgerald's claim assessed by a medical provider with the appropriate credentials to evaluate his eligibility for benefits as required by ERISA's implementing regulations.

47. MetLife failed to address or evaluate the clinical findings of Mr. Fitzgerald's treating and evaluating physicians and the results of the functional capacity evaluation regarding Mr. Fitzgerald's symptoms, restrictions, functional limitations, and disability.

48. MetLife failed to conduct a reasonable vocational review of Mr. Fitzgerald's ability to perform the duties of any occupation, as required by the terms of the Plan.

49. MetLife failed to meet the minimum requirements for the denial of Mr. Fitzgerald's LTD benefits, in violation of ERISA, 29 U.S.C. 1133, which requires that upon a denial of benefits, the administrative review procedure must include adequate notice in writing setting forth the specific reasons for the denial of benefits and a reasonable opportunity for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

50. MetLife failed to meet the Plan's requirements for review of claims that have been denied.

51. MetLife failed to provide Mr. Fitzgerald with a full and fair review of his claim for LTD benefits.

52. MetLife failed to respond to Mr. Fitzgerald's attempts to engage in a meaningful dialogue regarding the evaluation of his claim.

53. Any discretion to which MetLife may claim it is entitled under the terms of the LTD and Plan is negated by its failure to provide Mr. Fitzgerald with an explanation as to its adverse action as proscribed by ERISA and its implementing regulations.

54. Any discretion to which MetLife may claim it is entitled under the terms of the Plan is negated by its failure to render a reasonable determination on Mr. Fitzgerald's appeal.

55. MetLife failed to meet the notice requirements required by ERISA's implementing regulations. In particular, MetLife's adverse determination letters failed to articulate the basis for the decision to deny benefits, failed to contain a full discussion of why Mr. Fitzgerald's claim was denied, and failed to detail the standard behind the decision.

56. MetLife refused to disclose any internal guidance available to claims representatives in evaluating Mr. Fitzgerald's claims despite Mr. Fitzgerald's request for this information, and despite ERISA's implementing regulations' requirement to disclose this information.

57. The decision to terminate Mr. Fitzgerald's LTD benefits was self-serving, wrongful, unreasonable, irrational, solely contrary to the evidence, contrary to the terms of the Plan, and contrary to law.

58. MetLife was influenced by its financial conflict of interest, as both the administrator of the Plan and the payor of benefits thereunder, when it terminated Mr. Fitzgerald's LTD benefits and failed to provide him with the full and fair review of his claim required by law.

59. Due to the unlawful termination of benefits under ERISA, Mr. Fitzgerald has lost his rightful LTD benefits. He has also suffered emotional distress as a result of the Defendants' actions.

60. As a result of the termination of his claims for LTD benefits, Mr. Fitzgerald has lost the use of his LTD benefits.

61. Mr. Fitzgerald is entitled to restitution for the loss of his benefits at the Massachusetts statutory 12% interest rate.

**FIRST CAUSE OF ACTION**
**(Enforcement of Terms of Plan**
**(ALL DEFENDANTS)**

62. Mr. Fitzgerald realleges each of the paragraphs above as if fully set forth herein.

63. The Plan is a contract.

64. Mr. Fitzgerald has performed all his obligations under the contract.

65. 29 U.S.C. § 1132(a) states that:

   (a) A civil action may be brought ---

   1. by a participant or beneficiary –

      A. for the relief provided for in subsection (c) of this section, or

      B. to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

66. The Defendants' actions constitute an unlawful denial of disability benefits under ERISA, as provided in 29 U.S.C. § 1132(a)(1)(B).

67. The Defendants unlawfully terminated Mr. Fitzgerald's LTD benefits in part by: (1) dismissing without explanation, the substantial evidence supporting Mr. Fitzgerald's claim

for LTD benefits; and (2) denying Mr. Fitzgerald a full and fair review of their decision to terminate his claims for benefit.

68. In accordance with 29 U.S.C. §1132, Mr. Fitzgerald is entitled to LTD benefits under the terms of the Plan based upon his disabled status from September 2018 through the present and continuing until he is no longer disabled.

69. The Defendants have refused to provide Mr. Fitzgerald with his disability benefits and are, therefore, in breach of the terms of the Plan and ERISA, which require that the Defendants engage in a full and fair review of all claims and the administration of the Plan in the best interests of the participants of the Plan.

70. As a direct and proximate result of this breach, Mr. Fitzgerald has lost the principal and the use of his rightful disability benefits.

## SECOND CAUSE OF ACTION
### (Attorneys' Fees and Costs)
### (ALL DEFENDANTS)

71. Mr. Fitzgerald realleges each of the paragraphs above as if fully set forth herein.

72. Under ERISA, Mr. Fitzgerald deserves to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

73. MetLife has the ability to satisfy the award.

74. Mr. Fitzgerald's conduct of this action is in the interests of all participants who subscribe to the Plan, and the relief granted hereunder will benefit all such participants.

75. MetLife has acted in bad faith in denying Mr. Fitzgerald's disability benefits under the Plan.

76. The award of attorneys' fees against MetLife will deter others acting under similar circumstances.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully prays that the Court:

(1) Declare, adjudge, and decree that Mr. Fitzgerald is entitled to disability benefits as calculated under the terms of the Plan;

(2) Award Mr. Fitzgerald disability benefits and 12% interest from the dates of the MetLife's breach of contract;

(3) Declare, adjudge, and decree Mr. Fitzgerald is entitled to the LTD benefits to which he is entitled as a disabled individual under the terms of the Plan;

(4) Order that MetLife make restitution to Mr. Fitzgerald in the amount of all losses sustained by Mr. Fitzgerald as a result of the wrongful conduct alleged herein, together with 12% prejudgment interest;

(5) Award Mr. Fitzgerald the costs of this action and reasonable attorneys' fees; and

(6) Award such other relief as the court deems just and reasonable.

Date:  February 12, 2020                    Respectfully submitted for the Plaintiff,


                                            By:    /s/ Mala M. Rafik
                                                   Mala M. Rafik
                                                   BBO No. 638075
                                                   ROSENFELD & RAFIK, P.C.
                                                   184 High Street, Suite 503
                                                   Boston, MA 02110
                                                   T: 617-723-7470, ext. 213
                                                   F: 617-227-2843
                                                   E: mmr@rosenfeld.com